IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-57-BO-RJ

SHERBROOKE CORPORATE, LTD., )
and SAMUEL GOLDNER, )
                                  )
            Plaintiffs, )
                                  )
v. )          O R D E R
                                  )
GABRIEL MAYER, BEAU WALKER, )
JOE MATTHEW QUEEN, and HELIOS )
RISK SOLUTIONS, LLC, )
                                  )
            Defendants. )

This cause comes before the Court on defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiffs have responded, defendants have replied, and a hearing on the motion was held before the undersigned on September 24, 2024, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion is granted.

BACKGROUND

Plaintiffs initiated this action by filing a complaint in this Court on January 30, 2024, pursuant to the Court's federal question and supplemental jurisdiction. [DE 1]; 28 U.S.C. §§ 1331, 1367. The allegations in the complaint may be fairly summarized as follows. Plaintiff Sherbrooke Corporate (Sherbrooke) is a captive insurance corporation. Under North Carolina law, a captive insurer is "an insurance company that is owned by another organization and whose exclusive purpose is to insure risks of the parent organization and affiliated companies." N.C. Gen. Stat. § 58-3-165.

Plaintiff Goldner and defendants Mayer and Queen are the sole shareholders of Sherbrooke, with Goldner as majority shareholder holding fifty of the sixty outstanding Class A Voting Common Stock shares. Goldner, Mayer, and Queen were elected as directors of Sherbrooke, at which time Goldner stepped away from the day-to-day operation of Sherbrooke and Mayer and Queen performed all of Sherbrooke's operations as the primary officers. *See, generally,* [DE 1 ¶¶ 12-20]. In their capacity as officers of Sherbrooke, Mayer and Queen signed employment contracts with Sherbrooke, which included confidentiality, non-solicitation, non-disparagement, and inventions provisions. North Carolina law requires captive insurance companies to be managed by an approved captive manager. N.C. Gen. Stat. § 58-10-360. Sherbrooke initially hired Management Services International to serve as its captive manager. [DE 1 ¶¶ 28-31].

In March 2022, Goldner hired defendant Walker as the Chief Technology Officer (CTO) for Sherbrooke and Walker signed an employment contract. As part of his employment, Walker was to design, create, and maintain proprietary software (Proprietary Software) for Sherbrooke's and its related entities' exclusive use. The Proprietary Software enabled Sherbrooke to more effectively project and predict risk values in pricing individual covered incidents and more accurately price insurance contracts for existing and potential customers. The software also "provides additional services to Sherbrooke, which produce enormous economic value due to its secrecy and proprietary nature." [DE 1 ¶ 47]. Plaintiffs further allege that Sherbrooke "has used all commercially reasonable measures to ensure that the Proprietary Software remains confidential and provides unique value to Sherbrooke." *Id.* ¶ 48.

Plaintiffs allege that Queen and Mayer "severely and intentionally mismanaged Sherbrooke[.]" *Id.* ¶ 32. Examples of Queen's and Mayer's mismanagement include contracting,

without authority, with defendant Helios Risk Solutions (Helios), which is owned and or operated by Queen and Mayer, to serve as the captive manager for Sherbrooke while including unconscionable terms in the Helios Management Contract. Plaintiffs further allege that, sometime in 2022, Queen and Mayer began to create a corporate entity which would compete with Sherbrooke by providing insurance policies to nursing facilities, in direct competition with Sherbrooke. Plaintiffs allege that Queen and Mayer are using Sherbrooke's name, goodwill, and reputation; are using confidential information obtained through their employment with Sherbrooke; and are attempting to hire former and current Sherbrooke employees. Finally, plaintiffs allege that Queen and Mayer are disparaging Sherbrooke and Goldner to North Carolina Department of Insurance agents and regulators and that Walker, who resigned from Sherbrooke in April 2023, acting with Queen and Mayer, is "actively using confidential property of Sherbrooke, including but not limited to the Proprietary Software[.]" *Id.* ¶¶ 49-56.

In December 2023, Goldner became aware of the alleged actions by Queen and Mayer and noticed a special meeting of the Sherbrooke shareholders and board of directors for January 3, 2024. Queen and Mayer were removed as directors of Sherbrooke and Goldner fired Queen and Mayer as officers of Sherbrooke, effective immediately. Helios was terminated as captive manager of Sherbrooke by the remaining directors and replaced by Specialty Captive Group. Queen and Mayer challenged their removal as directors, contending that they did not receive notice as required by the by-laws. As of the filing of the complaint, Queen and Mayer were still minority shareholders of Sherbrooke. *Id.* ¶¶ 56-64.

Plaintiffs allege that, since their removal as directors, Queen and Mayer have refused to relinquish control of Sherbrooke assets and bank accounts and have engaged in a campaign to defame Goldner and Sherbrooke, that Queen and Mayer have violated their employment

3

contracts with Sherbrooke, and that they have violated their obligations and duties as directors and officers of Sherbrooke. *Id.* ¶¶ 65-76.

Plaintiffs have alleged fourteen claims for relief against defendants. Defendants filed an amended answer and counterclaims, with Queen, Walker, and Helios alleging state law claims for breach of contract against Sherbrooke. Defendants have also moved for judgment on the pleadings as to the sole claim alleged which invokes the subject matter jurisdiction of this Court – Sherbrooke's claim against defendants for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836. Plaintiffs also seek a declaratory judgment under 28 U.S.C. § 2201 against defendants Mayer and Queen, but such claim is insufficient alone to invoke the Court's subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (Declaratory Judgment Act is procedural and does not extend a federal court's jurisdiction); *Capitol Broad. Co., Inc. v. City of Raleigh, N. Carolina*, 104 F.4th 536, 540 (4th Cir. 2024) (subject matter jurisdiction must exist between parties in absence of Declaratory Judgment Act claim). Should judgment on the pleadings in their favor be granted on the misappropriation of trade secrets claim, defendants ask the Court to dismiss the remaining claims for lack of subject matter jurisdiction. In the alternative, defendants seek judgment on the pleadings as to claims two, three, six, eight, nine, twelve, and thirteen.

## DISCUSSION

A Rule 12(c) motion is considered under the same standard as a Rule 12(b)(6) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Thus, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell*

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, this standard does not permit a plaintiff to merely plead the elements of a cause of action alongside legal conclusions; the Court need not accept those as true. *Id.* at 555.

The primary distinction between Rules 12(b)(6) and 12(c) is that Rule 12(c) permits a court to consider a defendant's answer in addition to plaintiff's complaint. However, a defendant may not rely on allegations of fact as provided in the answer if they are contradictory to the facts presented in the complaint. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings should be granted therefore only "where the moving party is clearly entitled to the judgment it seeks as a matter of law." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008).

The Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, authorizes suits by owners of trade secrets that have been misappropriated. "To prevail on such a claim, a plaintiff must . . . establish (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023). The DTSA defines trade secrets as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as reasonable measures to keep such information secret have been taken by the owner and such information has independent economic value due to its not being generally known or ascertainable. 18 U.S.C.A. § 1839(3). "While trade secrets need not be disclosed in detail in a complaint alleging misappropriation[,]

the pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 96 (S.D.N.Y. 2022) (internal alterations, quotations and citation omitted); *see also Design Gaps, Inc. v. Hall*, No. 3:23-CV-186-MOC, 2023 WL 8103156, at *8 (W.D.N.C. Nov. 21, 2023).

The trade secret at issue in the complaint is plaintiffs' Proprietary Software which plaintiffs describe as having been designed to "incorporate and utilize medical records to project and predict risk values in pricing individual covered incidents more effectively" and "accurately price insurance contracts for both existing and potential customers." [DE 1 ¶¶ 45-46]. Plaintiffs also allege that the Proprietary Software "provides additional services to Sherbrooke, which produce enormous economic value due to its secrecy and proprietary nature." *Id.* ¶ 46.

Plaintiffs have adequately identified the Proprietary Software with sufficient specificity insofar as they have described projecting and predicting risk as well as accurately pricing insurance contracts. Insofar as plaintiffs would rely on their allegation that the software provides "additional services . . . which produce enormous economic value," this allegation is plainly speculative and conclusory.

Plaintiffs have not, however, sufficiently alleged that they took reasonable measure to keep the Proprietary Software secret. Plaintiffs describe the Proprietary Software as the confidential property of Sherbrooke and that "Sherbrooke has used all commercially reasonable measures to ensure that the Proprietary Software remains confidential[.]" *Id.* ¶ 48. In opposition to the motion for judgment on the pleadings, plaintiffs also rely on their allegation that each of the defendants signed employment contracts with confidentiality provisions, which required

employees of Sherbrooke not to disclose confidential information other than for Sherbrooke's benefit except under certain circumstances. *See* [DE 35 at 8].

First, the allegation that Sherbrooke has utilized "all commercially reasonable measures" to keep the Proprietary Software secret is conclusory. Second, the complaint does not actually allege that the Proprietary Software was treated as "confidential information" under the employment agreement confidentiality provision or that none of the exceptions to what employees must maintain as confidential applied. True, the complaint alleges that the Proprietary Software is the "confidential property of Sherbrooke." [DE 1 ¶ 48]; *see also id.* ¶ 44. But simply alleging that employees were generally subject to confidentiality provisions in an employment contract is not the same as plausibly alleging that any information or system was kept secret through commercially reasonable measures. *See, e.g., Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 130 (D. Md. 2020) ("confidentiality policy contained in its handbook. . . *coupled with its restriction of access* to the underwritings to approximately three percent of all Brightview employees, constitute reasonable security measures") (emphasis added).

Finally, even if plaintiffs have sufficiently alleged that the Proprietary Software was reasonably kept secret, they have not plausibly alleged misappropriation of their trade secret. Plaintiffs allege that "Upon information and belief, Defendant Walker – in coordination with Defendant Queen and Defendant Mayer – is actively using confidential property of Sherbrooke, including but not limited to the Proprietary Software to assist with operating this new competing insurance entity." [DE 1 ¶ 55]. "It is not enough to state that the accused wrongdoer 'acquired' or 'used' the trade secrets; such an allegation is 'general and conclusory' and requires dismissal." *VRX USA, LLC v. VRX Ventures, Ltd.*, No. 3:20CV409-GCM, 2020 WL 7229672, at *8 (W.D.N.C. Dec. 8, 2020) (addressing North Carolina's Trade Secrets Protection Act (NCTSPA),

which is substantially similar to the DTSA); *see Heska Corp. v. Qorvo US, Inc.*, No. 1:19CV1108, 2020 WL 5821078, at *8 (M.D.N.C. Sept. 30, 2020) (addressing similarity between definition of misappropriation under the NCTSPA and the DSTA). Plaintiffs have pleaded no factual enhancement to support their claim that any of the defendants are using the Proprietary Software. The bare allegations of use simply fail to nudge the claim across the line from conceivable to plausible.

"Courts routinely dismiss misappropriation of trade secret claims based on vague and conclusory allegations at the pleadings stage." *Design Gaps*, 2023 WL 8103156, at *8. The Court has reviewed the complaint and determines that the plaintiffs have failed to do more than present vague and conclusory allegations in support of their DTSA claim, even taking what has been alleged as true. The DTSA claim is appropriately dismissed.

"The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). As the sole basis for this Court's subject matter jurisdiction has dropped away, the Court, in its discretion, declines to exercise jurisdiction over the remaining state law claims. The remaining claims are based solely on state law, the Court discerns no inconvenience or lack of fairness to the parties should it decline to exercise supplemental jurisdiction, and this case is not so advanced that any economies would be gained by this Court retaining jurisdiction. *Id.* at 110. The Court further declines to exercise supplemental jurisdiction over defendants' counterclaims. *See Lang v. Mfrs. & Traders Tr. Co.*, 274 F.R.D. 175, 185 (D. Md. 2011). This action is therefore dismissed.

8

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion for judgment on the pleadings [DE 30] is GRANTED IN PART and DENIED IN PART as moot. Judgment on the pleadings in defendants' favor is GRANTED as to plaintiffs' Defend Trade Secrets Act claim. The alternative relief requested by defendants is DENIED as moot. The Court declines to exercise jurisdiction over the remaining claims in plaintiff's complaint and those claims are DISMISSED without prejudice. The Court further declines to exercise jurisdiction over the counterclaims and they are DISMISSED without prejudice. The remaining pending motions – plaintiffs' motion for preliminary injunction [DE 44], plaintiffs' consent motion for extension of time to complete discovery [DE 50], and the motion to withdraw as counsel [DE 52] – are DENIED WITHOUT PREJUDICE as moot. The clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this 22 day of October 2024.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE